1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CORY NAROG,

          Petitioner,

  v.

CALVIN REMMINGTON,

          Respondent.
_____/

No. C 09-1696 MMC

**ORDER DENYING FIRST AMENDED
PETITION FOR WRIT OF HABEAS
CORPUS**

    Before the Court is petitioner Cory Narog's First Amended Petition for Writ of

Habeas Corpus ("FAP"), filed August 26, 2009.  Respondent Calvin Remmington has filed

an answer; petitioner did not file a traverse.  Having read and considered the papers filed in

support of and in opposition to the FAP,[1] the Court rules as follows.

**BACKGROUND**

    In March 2006, in the Superior Court of California, in and for the County of San

Mateo, a jury found petitioner guilty of eleven counts of contempt, in violation of section

166(a)(4) of the California Penal Code, a misdemeanor.  Specifically, petitioner was

---

[1]On October 29, 2009, petitioner filed a Motion for Evidentiary Hearing and for
Permission to Conduct Discovery; thereafter, respondent filed opposition, to which
petitioner replied.  By order filed December 7, 2009, the Court denied the motion as
premature.  To the extent the parties included in their briefing of the motion, however,
argument pertaining to the merits of petitioner's claims, the Court has considered such
argument in connection with its determination herein.

1   charged and convicted of disobeying a restraining order that required petitioner, inter alia,

2   to stay at least fifty yards away from the residence of Jon Ballack ("Ballack"), a neighbor of

3   petitioner who, along with petitioner, resided on a cul-de-sac in Redwood Shores,

4   California.  (See Tr. 65-66.)[2]

5        Thereafter, on June 15, 2006, the trial court suspended imposition of sentence, and

6   placed petitioner on supervised probation for a period of three years on the condition, inter

7   alia, that he serve six months in the County Jail.  (See Tr. 438.)  On June 22, 2007, the

8   Appellate Department of the San Mateo Superior Court affirmed the judgment, and, on July

9   23, 2007, denied petitioner's application for certification, by which petitioner sought further

10  review of the judgment by the California Court of Appeal.  (See FAP ¶ 6; Resp's Mem. of

11  P. & A. at 1:7-8.)  Petitioner next filed a petition for a writ of habeas corpus in the San

12  Mateo Superior Court, which petition was denied in an order dated October 22, 2007.  (See

13  Resp's Mot. to Dismiss, filed June 9, 2009, Ex. B attached to Ex. 1.)  Thereafter, petitioner

14  filed a petition for a writ of habeas corpus in the California Court of Appeal, which petition

15  was summarily denied on January 7, 2009.  (See id. Ex. C attached to Ex. 1.)  Petitioner

16  then filed a petition for a writ of habeas corpus in the California Supreme Court, which

17  petition was summarily denied on March 18, 2009.  (See id. Ex. 2.)

18       On April 17, 2009, petitioner filed his initial petition in federal district court, and, on

19  August 26, 2009, filed his FAP.

20                                    **LEGAL STANDARD**

21       A district court may grant a petition challenging a state conviction on the basis of a

22  claim reviewed in state court only if the state court's adjudication of the claim: "(1) resulted

23  in a decision that was contrary to, or involved an unreasonable application of, clearly

24  established Federal law, as determined by the Supreme Court of the United States; or

25  (2) resulted in a decision that was based on an unreasonable determination of the facts in

26  light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d).

27  _____

28       [2]The trial transcript is attached as Exhibit 3 to respondent's answer, filed September 29, 2009, as supplemented by a notice filed May 3, 2010.

2

1   "[I]t is the habeas applicant's burden to show that the state court applied [clearly

2   established federal law] to the facts of his case in an objectively unreasonable manner."

3   Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

4        For purposes of § 2254(d), in determining whether the state court's rejection of a

5   federal claim is unreasonable, the district court considers the "last reasoned decision"

6   issued by a state court, see Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991), which, in

7   this instance, is the Superior Court's order of October 22, 2007.

8                                   **DISCUSSION**

9        In his FAP, petitioner asserts the following claims: (1) petitioner was deprived of due

10  process when the prosecution allegedly failed to disclose exculpatory evidence; and

11  (2) petitioner was deprived of his right to the effective assistance of counsel, when trial

12  counsel (a) failed to obtain the allegedly exculpatory evidence, and (b) did not present to

13  the trial court a "Marsden"[3] motion petitioner allegedly had prepared.

14  **A.  Disclosure of Exculpatory Evidence**

15       Petitioner's first claim is directed to Count Nine of the Complaint.

16       Counts One through Nine alleged violations occurring on nine separate dates and, in

17  each instance, that petitioner willfully violated the restraining order by driving into the

18  driveway of a neighbor whose driveway was located within fifty yards of the Ballack

19  residence, i.e., the area in which petitioner was prohibited from entering under the terms of

20  the restraining order.  Specifically, Counts One through Eight were based on an allegation

21  that, on eight separate dates in May 2005, petitioner drove into the driveway of Raymond

22  Fung ("Fung"), and Count Nine was based on an allegation that, on June 27, 2005,

23  petitioner drove into the driveway of Joan Pace ("Pace").

24  //

25

26       [3]In People v Marsden, 2 Cal. 3d 118 (1970), the California Supreme Court, in
27  addition to acknowledging an indigent defendant's right to discharge or substitute appointed
    counsel where "the first appointed counsel is not adequately representing the accused,"
    held that such defendant, in support of a motion to substitute new counsel, is entitled to an
28  opportunity to be heard and to "present argument or evidence."  See id. at 123-24.

1    During her closing argument, the prosecutor relied on Fung's testimony to support a

2  conviction on Counts One through Eight.  Fung testified that, after the restraining order had

3  issued, he saw petitioner drive into Fung's driveway, and that, in response, he then

4  installed a video surveillance camera that overlooked his driveway, which camera was set

5  to record twenty-four hours a day, with the exception of days on which Fung was away on

6  vacation.  (See Tr. 254-55.)  Fung also testified that he "transfer[red] the sections [of the

7  tapes] that [he] thought were valuable onto DVDs."  (See Tr. 257.)  The prosecution played

8  portions of the DVDs to the jury (see Tr. 262-64), one of which, the prosecutor argued,

9  showed the conduct alleged in Counts One through Eight, specifically, petitioner's driving

10  into Fung's driveway on various dates in May 2005 (see Tr. 358).

11    With respect to Count Nine, the prosecutor relied on the testimony of both Pace and

12  Elayne Spencer, Pace's daughter, each of whom testified she saw Fung drive into Pace's

13  driveway on June 27, 2005.  (See Tr. 174-75, 180-81, 358.)

14    In his petitions for a writ of habeas corpus filed in state court, petitioner claimed that

15  the prosecution, in violation of Brady v. Maryland, 373 U.S. 83 (1963), deprived petitioner of

16  due process by failing to disclose allegedly exculpatory evidence pertaining to Count Nine.

17  Specifically, petitioner argued, the prosecution had not disclosed to him any videotape

18  recorded by Fung on June 27, 2005; according to petitioner, had the prosecution disclosed

19  such recording, it would have shown petitioner had not driven by Fung's residence on that

20  date, and, consequently, that he could not have driven into Pace's driveway.[4]

21    The Superior Court denied petitioner's Brady claim, for the reason that petitioner had

22  failed to offer any evidence to support a finding that Fung possessed a videotape of

23  activities occurring on June 27, 2005, much less that the prosecution was in possession or

24

25

26    [4]At the time of the violations, Fung lived next door to petitioner, and Pace lived next
   door to Fung.  (See Tr. 139-41.)  As noted, the subject street is a cul-de-sac, such that a
27  person driving toward Pace's residence necessarily would first pass Fung's residence.  It
   appears to be petitioner's theory that Fung's camera was positioned such that it would have
28  recorded every vehicle driving by the front of Fung's residence.

1  control of such a videotape.[5]  The Superior Court also noted that, to the extent any

2  evidence had been offered relevant to the issue, such evidence did not support petitioner's

3  theory.  In particular, the court observed, Fung had testified at trial that he transferred onto

4  DVDs the portions of the videotapes he thought were important, and thus a reasonable

5  inference could be drawn that Fung had "periodically transferred relevant portions of the

6  videotapes to his computer and then reused the tapes."  (See Resp't's Mot. to Dismiss. Ex.

7  B attached to Ex. 1 at 2.)

8          As set forth below, petitioner fails to show the Superior Court's decision was contrary

9  to, or involved an unreasonable application of, clearly established federal law, or was

10  based on an unreasonable determination of the facts presented.

11         A prosecutor's duty to disclose exculpatory evidence under Brady extends only to

12  exculpatory "information within the possession or control of law enforcement personnel";

13  such duty does not require the prosecution to disclose "information that it does not possess

14  or of which it is unaware."  See United States v. Chen, 754 F.2d 817, 824 (9th Cir. 1985).

15  Here, petitioner fails to point to any evidence in the record to support a finding that Fung

16  possessed a videotape of any activities occurring on June 27, 2005.  Further, and more

17  significantly, even assuming, arguendo, Fung possessed a videotape that showed

18  petitioner never drove in front of Fung's residence on June 27, 2005, petitioner fails to

19  identify any evidence in the record to support a finding that the prosecution was aware of

20  such a videotape, or that such videotape was in the possession or control of any law

21  enforcement personnel.  In short, petitioner's assertion that such a videotape existed and

22  that the prosecution failed to disclose evidence material to the defense constitutes no more

23  than speculation.

24         To the extent petitioner argues the state courts erred in not affording him an

25  opportunity to depose Fung, apparently to afford petitioner an opportunity to discover

26  whether Fung had in fact recorded an exculpatory videotape and/or so informed the

27  _____

28          [5]In the instant case, as noted above, the "last reasoned decision" implicated by the petition, see Ylst, 501 U.S. at 803-04, is the Superior Court's order of October 22, 2007.

1    prosecution, petitioner's claim fares no better.[6]  Petitioner fails to cite any authority

2    recognizing a federal right to take a postjudgment deposition in an effort to determine in the

3    first instance whether the deponent might be aware of evidence that could assist the

4    petitioner in collaterally challenging a state court conviction.  Indeed, as the Supreme Court

5    has held, even in the context of pretrial proceedings, "[t]here is no general constitutional

6    right to discovery in a criminal case, and Brady did not create one."  See Weatherford v.

7    Bursey, 429 U.S. 545, 559 (1977).

8         Accordingly, petitioner has failed to show he is entitled to relief on this claim.

9    **B.  Ineffective Assistance of Counsel**

10        Petitioner alleges his trial counsel provided ineffective assistance of counsel by

11   (1) failing to request from the prosecution all videotapes Fung had recorded, and (2) failing

12   to present to the trial court a Marsden motion petitioner allegedly had prepared.

13        As set forth below, petitioner again fails to show the Superior Court's decision was

14   contrary to, or involved an unreasonable application of, clearly established federal law, or

15   was based on an unreasonable determination of the facts presented.

16        **1.  Failure to Obtain Videotapes**

17        In his state court petitions, petitioner, citing Strickland v. Washington, 466 U.S. 668

18   (1984), argued that his trial counsel provided ineffective assistance of counsel by failing to

19   request from the prosecution a copy of all videotapes made by Fung.  As discussed above,

20   petitioner takes the position that, had such videotapes been disclosed, the videotape of

21   activities occurring on June 27, 2005 would have shown petitioner had not driven in front of

22   the Fung residence on that date.

23        "A convicted defendant's claim that counsel's assistance was so defective as to

24   require reversal of a conviction . . . has two components."  Id. at 687.  "First, the defendant

25   must show that counsel's performance was deficient."  Id.  "Second, the defendant must

26
_____

27        [6]In his state court petitions, petitioner requested, without elaboration or citation to
     any authority, that he be allowed to depose a number of individuals, including Fung.  In
28   denying the petition, the Superior Court did not expressly address that request.

show that the deficient performance prejudiced the defense." Id.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

Here, the Superior Court found that any failure by trial counsel to request from the prosecution a copy of all videotapes recorded by Fung did not prejudice petitioner.  In particular, as discussed above, the Superior Court found petitioner had offered no evidence to support a finding that all such videotapes were retained and still existed. Petitioner fails to show such finding by the Superior Court is contrary to the record. Consequently, in the absence of any evidence that the prosecution was in control or possession of a videotape that contained arguably exculpatory evidence, petitioner cannot establish he was prejudiced by any failure on the part of his counsel to request such evidence from the prosecution.[7]  Further, to the extent petitioner argues, in the instant petition, that the state courts should have allowed him to depose his trial counsel, such argument likewise is unavailing, because, as discussed above with respect to petitioner's Brady claim, petitioner fails to cite any authority recognizing a federal right to take a postjudgment deposition in an effort to determine in the first instance whether the deponent may be aware of evidence that could assist the petitioner in collaterally challenging a state court conviction.

Accordingly, petitioner has failed to show he is entitled to relief on this claim.

**2.  Failure to Present Marsden Motion**

Petitioner's second claim is directed to all the counts on which he was convicted.

In his state court petitions, petitioner alleged he had prepared a Marsden motion and had requested that his appointed trial counsel submit it to the trial court.  Petitioner further alleged that the trial court never ruled on the motion because his trial counsel did not submit it to the court.  Citing United States v. Cronic, 466 U.S. 648 (1984), petitioner

---

[7]Indeed, petitioner offers no evidence that his counsel did not request all relevant and available discoverable materials from the prosecution.  Rather, petitioner seems to assume that if such videotape was not produced, it was not requested.

1   contended such asserted failure by counsel was an act "in direct opposition to his client,"

2   and, consequently, that petitioner was entitled to relief "without the necessity of proving

3   prejudice."  (See Resp't Mot. to Dismiss. Ex. 1 at 19.)

4        In addressing petitioner's argument, the Superior Court first noted:  "[Cronic] stands

5   for the proposition that where there is a complete denial of counsel or there is a complete

6   breakdown in the adversarial process – for example, where a court order prevented

7   defense counsel from cross-examining effectively – a defendant is entitled to reversal

8   without a showing of prejudice."  (See id. Ex. B attached to Ex. 1 at 4).  Next, the Superior

9   Court found petitioner had not shown that his counsel's asserted failure to present a

10  Marsden motion was "tantamount to no representation at all under Cronic" (see id.) and,

11  consequently, petitioner was required to demonstrate prejudice under the standards set

12  forth in Strickland, a showing the court held petitioner had not made.

13       In the instant petition, petitioner does not contend the Superior Court's finding is

14  erroneous if Strickland applies; rather, petitioner argues, the Superior Court's interpretation

15  and application of Cronic was unreasonable, in that he should not have been required to

16  show he was prejudiced as a result of the trial court's not having considered the Marsden

17  motion.

18       In Cronic, the Supreme Court discussed three "circumstances [involving a

19  defendant's counsel] that are so likely to prejudice the accused that the cost of litigating

20  their effect in a particular case is unjustified."  See Cronic, 466 U.S. at 658.  Thereafter, the

21  Supreme Court summarized those three circumstances as follows:

22       First and most obvious was the complete denial of counsel.  A trial would be
         presumptively unfair, we said, where the accused is denied the presence of
23       counsel at a critical stage, a phrase we used in [two prior cases] to denote a
         step of a criminal proceeding, such as arraignment, that held significant
24       consequences for the accused.  Second, we posited that a similar
         presumption was warranted if counsel entirely fails to subject the
25       prosecution's case to meaningful adversarial testing.  Finally, we said that in
         cases like Powell v. Alabama, 287 U.S. 45 (1932), where counsel is called
26       upon to render assistance under circumstances where competent counsel
         very likely could not, the defendant need not show that the proceedings were
27       affected.

28  See Bell v. Cone, 535 U.S. 685, 696-97 (2002) (internal quotations, citations, alterations

8

1  and footnote omitted).

2      Petitioner cites to no authority holding the failure of counsel to file or the court to

3  hear a Marsden motion is itself a circumstance of the magnitude identified in Cronic and

4  Bell. Indeed, the Ninth Circuit has rejected such an argument. In particular, in Schell v.

5  Witek, 218 F.3d 1017 (9th Cir. 2000), the Ninth Circuit rejected the petitioner's argument

6  that the trial court's failure to rule on a Marsden motion was "prejudicial per se." See id. at

7  1025-28. Rather, as the Ninth Circuit explained, whether a petitioner is required to make a

8  showing of prejudice is dependent upon the petitioner's showing with respect to the

9  grounds for such motion. See id. at 1027 (noting "not every conflict or disagreement

10 between the defendant and counsel implicates Sixth Amendment rights"). If, for example,

11 the petitioner shows that the unresolved Marsden motion was based on a theory that "a

12 serious conflict [ ] exist[ed] that resulted in the constructive denial of assistance of counsel,"

13 and the petitioner further establishes such a conflict actually existed, the trial court's failure

14 to rule on such motion would constitute prejudicial error per se. See id. at 1027-28. By

15 contrast, if the unresolved Marsden motion was based on a "serious conflict [that] did not

16 rise to the level of a constructive denial of counsel," the petitioner would be required to

17 establish prejudice. See id. at 1028 (citing Strickland, 466 U.S. at 691-92).

18     In Schell, the petitioner therein had set forth in his federal petition a relatively

19 detailed description of a conflict he asserted existed between himself and his appointed

20 counsel, which allegations the Ninth Circuit found sufficient to entitle him to an evidentiary

21 hearing on his claim. See id. at 1026. Here, by contrast, petitioner has not offered a copy

22 of his Marsden motion or described in any of his petitions either the extent or nature of any

23 conflict or other deficiency in representation that he had identified in such motion. As a

24 consequence, the issue presented herein is whether an appointed counsel's failure to

25 present a Marsden motion, irrespective of its content, constitutes the type of conduct from

26 which prejudice is presumed. Based on the above-discussed case authority, the Court

27 finds it does not.

28     Nor does the record support a finding of any other circumstance obviating the need

9

for a showing of prejudice and, indeed, petitioner has not argued any such circumstance exists.  Trial counsel did not "entirely fail[ ] to subject the prosecution's case to meaningful adversarial testing," see Bell, 535 U.S. at 696, as evidenced by trial counsel's having cross-examined witnesses called by the prosecution, offered petitioner's testimony in the defense case, and made both an opening statement and a closing argument, and there is no showing that trial counsel was required to defend petitioner under "circumstances where competent counsel very likely could not."  See id.; cf. Powell, 287 U.S. at 56, 60, 71 (holding defendant charged with capital crimes was deprived of due process, where counsel was not appointed until first date of jury trial and was given no opportunity to investigate).  In sum, the Court finds the Superior Court's determination was neither contrary to nor involved an unreasonable application of Cronic or any other federal authority.

Accordingly, petitioner has failed to show he is entitled to relief on this claim.

**CONCLUSION**

For the reasons set forth above, the First Amended Petition is hereby DENIED.

The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:  June 23, 2010

MAXINE M. CHESNEY
United States District Judge